SAMUEL S. CHISHOLM

*v.*

THEODORE WILLIAMS *et al.*

*Filed at Springfield April 5, 1889.*

1. MECHANIC'S LIEN—*of the estate or interest to which the lien may attach.* The statute gives a mechanic's lien for labor or materials upon any estate or interest the owner may have in the premises at the time of making the contract. The statute gives the lien against a party in possession claiming to own the title, and it is not necessary to show the title any further, in order to create the lien.

2. SAME—*time of payment—extension thereof.* To give a party furnishing labor and materials in the erection of a building a lien upon the premises, the contract must provide for payment within one year from the time stipulated for the completion thereof. If the price is to be paid within that time, a lien attaches, and it will not be lost by a subsequent extension of the time of payment.

3. RENEWAL NOTE—*whether it will operate as payment of the prior note.* As a general rule, a new note given in renewal of another one will not be regarded as a satisfaction of the first, unless there is an express or implied agreement to that effect.

4. A party entitled to a mechanic's lien for improvements on certain property, took the owner's note, payable within twelve months from the time fixed for the completion of the work, and transferred the same to a third party, who, on its maturity, took a new note in renewal of the same, giving further time for payment, and took judgment thereon. The original payee took an assignment of the judgment, and offered to

cancel the same in such manner as the court might direct: *Held,* that the latter had a right to a decree for a mechanic's lien on the original note, although the time when the renewal note fell due was more than one year after the time fixed for the completion of the work.

5. COSTS—*on modification of decree—on appeal.* Where a decree for a mechanic's lien, on appeal, was modified by a reduction of the amount found to be due, but otherwise affirmed, this court directed that each party pay one-half the costs in this court.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of Coles county; the Hon. C. B. SMITH, Judge, presiding.

This was a proceeding brought by Samuel S. Chisholm and Wellington C. Chisholm, partners, composing the firm of Chisholm Bros., against F. F. Randolph, the First National Bank of Charleston, the First National Bank of Norwalk, Ohio, Theo. Williams and Frank Goodnow, to enforce a mechanic's lien on certain mill property in Charleston, Illinois, for the payment of $2105, due June 15, 1883, and the interest thereon.

The contract under which the labor was performed and the materials were furnished was as follows:

"A memorandum of contract entered into this 10th day of May, 1882, between Chisholm Bros., of Chicago, Illinois, of the first part, and F. F. Randolph, of Decatur, Illinois, of the second part.

"*Witnesseth,* that the party of the first part, for and in consideration of the sum of $18,500, paid, as hereinafter described, by the party of the second part, hereby contract and agree to make or cause to be made the following improvements and work in the flouring mill at Charleston, Illinois, owned by said party of second part, viz.: A full set of Jonathan Mills' reduction machines, seven in number, with all their attachments and appurtenances. * * * Above work is to be completed, the mill furnished and in running order, by the 1st day of August, 1882, and the party of the first part agree to hold themselves liable for any loss to the party of the second part

for any detention or delay in starting after said date of August 1, 1882; * * * and in consideration of the faithful performance of above mentioned contract by the party of the first part, the party of the second part agrees and binds himself hereby, as follows: To pay or cause to be paid to the party of the first part, or their order, the sum of $10,500 in cash during the performance of this work, as follows: All freights as they arrive, the weekly bills or wages of the workmen employed to do this work, and such other sums of money up to $10,500 on the machinery and other articles furnished, as they arrive from this time to August 1; and at the expiration of the time set, and upon completion and satisfactory performance, as above stated, of said mill, he will (party of the second part) execute his promissory note for $8000, in equal sums of $2000 each, at three, six, nine and twelve months, respectively, to the party of the first part, or their order, adding to the six months and nine months notes $70 and $105, respectively, in lieu of interest on same. * * * The party of the first part have the right conceded to them to use all material, lumber, belting, machinery, shafting, and other matters now in said mill, without cost to them, in the completion of said contract, but have no control over any material not so used."

The materials were furnished and the mill was completed according to the terms of the contract. The work was not completed, however, until the 15th day of September, 1882, but upon the completion of the work the mill was accepted by Randolph, and the four notes for the $8000 remaining due were then all executed, due in three, six, nine and twelve months, as provided in the contract. These notes were all paid except the one for $2105, due in nine months, which was assigned before maturity to Nordyke & Marmon Co., a corporation of the State of Indiana. Three days after the maturity of this note, and on June 18, 1883, Randolph executed to Nordyke & Marmon Co. a new note for $2105, due in

four months, with interest at eight per cent, which was guaranteed by Chisholm Bros., and the old note was surrendered. Neither the old note nor the new one has ever been paid. A judgment, however, was rendered in favor of Nordyke & Marmon Co. on the new note, November 27, 1883, for $2179.29, the amount of principal and interest. This judgment, at the time of the filing of the petition, was owned and held by Chisholm Bros., the petitioners, and they offered, in their bill, to cancel and satisfy the judgment in such manner as the court might direct.

· As heretofore said, the petition was brought to collect the amount of the note which became due in nine months after it was executed, to-wit, June 15, 1883, which was executed for $2105. As to the execution and delivery of the new note on the 18th of June, 1883, by Randolph to Nordyke & Marmon Co., for said sum of $2105, in the place of the original note, it is alleged in the petition, that said last note was not a payment of said original note, and that there was no agreement or understanding between said Randolph and orators that such note should be in satisfaction or payment of the original indebtedness, but upon the contrary, orators aver that said indebtedness of $2105, so originally evidenced by said third promissory note, remained due and wholly unpaid to your orators; that they have frequently requested said Randolph to pay the same, etc.

In the circuit court, the First National Bank of Charleston filed a disclaimer, and was dismissed out of the case. Randolph, after the cause was remanded from the Appellate Court, failed to answer, and a default was taken as to him. The other three defendants, the First National Bank of Norwalk, Ohio, Theo. Williams and Frank Goodnow, answered the bill. A replication was filed, and on a hearing before the court, a decree was rendered in favor of complainants, which was affirmed in the Appellate Court.

Messrs. CRAIG & CRAIG, for the appellant:

When the contract is made with one having no title to the land, no lien will attach thereto. *Reed* v. *Houston,* 12 Iowa, 35; Rev. Stat. chap. 82, sec. 1.

Any improvement made by an outsider without the written consent of the railroad, would not create a lien on the realty. If it did, the railroad is a necessary party. *Dunphy* v. *Riddle,* 86 Ill. 26; *Crowl* v. *Nagle,* id. 440; *Scanlan* v. *Cobb,* 85 id. 296; *Gates* v. *Savings Bank,* id. 256.

The new note taken by Nordyke & Marmon Co., and the judgment thereon, operated as a discharge of the prior note. *Wilkinson* v. *Stewart,* 30 Ill. 58; *Smalley* v. *Edey,* 19 id. 211.

The taking the new note for the debt and interest was a waiver of the lien. *Kinzie* v. *Thomas,* 28 Ill. 505; *Conover* v. *Warren,* 1 Gilm. 501; *Cowl* v. *Varnum,* 37 Ill. 183.

Messrs. WILEY & NEAL, for the appellees:

The lien attached to any interest that Randolph may have had in the land. (Rev. Stat. chap. 82, sec. 2.) It extends to after-acquired interest in property. *Insurance Co.* v. *Batchen,* 6 Bradw. 621.

A person in possession is considered the owner. 2 Phillips on Mechanic's Liens, sec. 69.

The extension of the time of payment does not defeat the lien. *Paddock* v. *Stout,* 121 Ill. 571.

A mechanic's lien is assignable. *Insurance Co.* v. *Batchen,* 6 Bradw. 621; *Davis* v. *Billsland,* 18 Wall. 659; *Ritler* v. *Stevenson,* 6 Cal. 388; *Isage* v. *Bossieux,* 15 Gratt. 83; *Kenny* v. *Gage,* 33 Vt. 302; *Tuttle* v. *Howe,* 14 Minn. 150; Phillips on Mechanic's Liens, secs. 54, 55.

The taking of a note on account of a debt operates as a conditional payment, and the understanding of the parties is, that if paid, it shall discharge the original debt. Phillips on Mechanic's Liens, sec. 275; Sutherland on Damages, p. 375;

*Heartt* v. *Rhodes,* 66 Ill. 351; *Morrison* v. *Smith,* 81 id. 221; *Bond* v. *Insurance Co.* 106 id. 654.

A party may return the note and bring suit upon the original cause of action. *Stevens* v. *Bradley,* 22 Ill. 244; *Hughes* v. *Wheeler,* 8 Cow. 76; *McConnell* v. *Stettinius,* 2 Gilm. 707.

What constitutes a waiver must be determined from the circumstances of each particular case, it being essentially a question of intention, such intention implying either an actual determination of the lienholder to surrender the right, or such acts on his part that the public may reasonably suppose he had waived his security of lien. Phillips on Mechanic's Liens, sec. 273.

The time for instituting a suit to enforce the lien must have expired before the note or other security becomes due, in order to produce a waiver. Phillips on Mechanic's Liens, sec. 282.

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the Court:

It is said in the argument, that the time of payment was extended beyond one year from the completion of the work, and this defeated the lien. Section 3, chapter 82, of our statute, entitled "Liens," provides: "When the contract is expressed, no lien shall be created if the time stipulated for the completion of the work or furnishing materials is beyond three years from the commencement thereof, or the time of payment beyond one year from the time stipulated for the completion thereof." Here, the work was completed on the 15th day of September, 1883, and the note in question was made payable in nine months from that time, which would be less than one year, and clearly within the terms of the statute.

But it is argued that the extension of the time of payment for four months after the note became due, made the money payable more than a year from the time of the completion of the contract, and thus the lien was lost. The same question arose in *Paddock* v. *Stout,* 121 Ill. 572, and we there held that

the extension of the time of payment after the execution of the contract would not defeat the lien,—that the lien depends upon the provisions which the contract makes as to the time of payment. Here, under the contract made by the parties, the time of payment was not extended beyond one year from the completion of the work, and complainants have not lost the lien conferred by the statute.

It is also claimed that Randolph had no interest in the premises in controversy on the 1st day of May, 1882, when he made the contract with the complainants, and upon this ground the decree is erroneous. Our statute does not require that a person should own the fee to enable a mechanic to obtain a lien. It declares: "The lien provided for * * * shall extend to an estate in fee, for life, for years, or any other estate, or any right of redemption or other interest which such owner may have in the lot or land at the time of making the contract." The language here employed is very broad, and is sufficient to carry the lien to any title whatever that Randolph might possess when he entered into the contract. What title Randolph held when he entered into the agreement with the complainants we are not called upon to determine in this proceeding. The evidence shows that he was in possession of the premises, claiming to be the owner of the mill, when the contract was made. It also appears, that in 1881 the First National Bank of Charleston leased the premises to Neal Bros. for five years, with the privilege of buying. This contract was transferred by the Neal Bros. to Randolph as early as February, 1882, and he was placed in possession of the property. It will not be necessary to trace the title back from the First National Bank of Charleston, and show that the bank derived a title in fee or for years. It is enough that the evidence shows Randolph in possession of the premises, claiming title therein.

It is also claimed, in the argument, that the surrender of the note due June 15, 1883, and the acceptance of the note of June 18, 1883, payable to Nordyke & Marmon Co., and the

rendition of judgment thereon, was a payment of the original note, and a discharge of the lien given by the statute. If the last note, under an agreement of the parties, had been accepted as payment of the first note, there would be much force in the position of counsel; but such was not the case. It is shown by the evidence, beyond question, that there was no understanding or agreement that the last note should be accepted as payment of the first. We think it may be stated to be a general rule, that a new note given in renewal of another note will not be regarded as a satisfaction of the original note, unless there is an express or implied agreement that such was the intention of the parties.

If we are correct in this position, then it is clear that the debt due on the 15th day of June, 1883, ($2105,) has never been paid or discharged, and as complainants have an assignment of the judgment rendered upon the note given in renewal, and were prepared to cancel it when the bill was filed, no reason is perceived why they could not maintain their bill, as held in the circuit and Appellate courts. But upon an examination of the decree rendered in the circuit court, it appears that the decree requires Randolph to pay $2709.28 within a specified time, with interest from December 16, 1887. This was a larger sum than was actually due. The basis of the decree should have been the amount due June 15, 1883,—— $2105,—for which the original note was executed. Computing interest on this amount from June 15, 1883, until December 16, 1887, at six per cent,—four years, six months and one day,—the amount due will be $2673.70,—$35.59 less than the amount decreed to be paid.

As to the excess of $35.59, the decree of the circuit court and the judgment of the Appellate Court will be modified. In all other respects they will be affirmed, each party to pay one-half of the costs in this court.

*Decree reversed in part and in part affirmed.*