## DAVID KELLEY

v.

## ALFRED POST AND FRANCIS A. RIDDLE.

*Negotiable Instruments—Note—Principal and Surety.*

1.   The president of a corporation can not bind it to one with notice, by giving its note to pay his own debt.

2.   Where one note taken in renewal of a former note extends the time of payment, there is no presumption of law that the second is a satisfaction of the first.

3.   The ground upon which debtors, whether principals or sureties, are discharged by the dealing of the creditor with collaterals, is prejudice to them in consequence of such dealing.

4.   In an action to recover upon a promissory note, the defendants contending that the same was paid, this court holds that it was error to instruct the jury that the change of collaterals, several notes having been given, discharged one of the defendants, and that the verdict for the defendants can not stand.

[Opinion filed December 11, 1890.]

APPEAL from the Circuit Court of Cook County; the Hon. JULIUS S. GRINNELL, Judge, presiding.

Messrs. TRUMBULL, WILLITS, ROBBINS & TRUMBULL, for appellant.

Messrs. L. H. BISBEE and JOHN S. STEVENS, for appellees.

GARY, J.   The appellant sued the appellees upon a prom-

issory note for $16,000, dated February 12, 1889, payable ninety days after date, to the Union National Bank of Chicago, and indorsed to the appellant.

The bank discounted the note on the day of its date, and then received from the makers of it, as collateral security, a note for $25,000, dated September 14, 1888, payable one year after date, made by James J. West. West was the president and principal stockholder of the Chicago Times, the stock of which was $1,000,000.

All of the controversy in this case grows out of the mutations that the evidences of that debt of $25,000 underwent in the hands of the cashier of the bank, Mr. Odell, who was also the agent of the appellant, holding both notes for him after the $16,000 note was indorsed to him.

It will not, in the view we take of the case, be necessary to consider whether the appellant, as indorsee of the $16,000 note, held any different position with regard to it than the bank did, nor the character or extent of the agency of Odell for either the bank or the appellant.

Before the $25,000 note became due, Odell took from West at one time, a note, purporting to be the note of the Chicago Times, signed by West as president, and by West individually, payable to his own order, and by him indorsed for the same amount, due at the same time; next, a like note of West, individually; and, lastly, the original note was returned to Odell. On each change of notes the one Odell had in hand, was surrendered for the one taken. It is obvious from this statement that the identity of the debt, and the security (not the mere piece of paper) for its payment, remained always the same.

The Chicago Times was never bound, for West, as president, could not bind the corporation to one with notice, to pay his own debt. There is testimony in the record of some representations made by Odell to the appellee Riddle, who, for the present purpose, may be assumed to have been only a surety for Post, that the $16,000 was paid. If it should be found by another jury that such representations were made, and that Riddle acted upon them to his prejudice, a question will arise not now considered.

The whole of the defense under present consideration proceeds upon the ground that there is some necromancy by which the change of paper is, of itself, a payment of the debt of which the first paper was the evidence, regardless of intention or motive of anybody. Thus, if the holder of paper, as collateral, written with bad ink, or on poor paper, or which, by accident, had become partially defaced, exchanges it for a fair paper of like tenor, the debt is, as to the pledgor, paid. The consequence is too absurd.

It should be noted before setting out the instructions that the original $25,000 note was payable to James E. Munroe, and by him indorsed without recourse.

We shall not go over the many questions presented; very likely they may not arise on another trial. We only decide that the court erred in holding, as it did, in instructions, that the change of paper discharged the appellee Riddle.

The following instructions given, among others, for the appellees, present the error:

"If the jury believe from the evidence that the defendant Riddle was a surety on the note sued on in this case, and that at the time of the delivery of that note to the payee thereof, and as a part of the same transaction, the defendant Alfred Post delivered to said payee, the Union National Bank, the note of James J. West, payable to James E. Munroe, in evidence in this case, as collateral security to the note sued on in this case, and that the plaintiff in this suit, with knowledge of the fact that said Riddle was a surety on said note sued on in this case, and without the consent of said Riddle, surrendered said note of said West, payable to said Munroe, to said West, then such surrender was a conversion of the last mentioned note and a change in the contract of said Riddle with the holder of the note upon which this suit was brought, and operated in law to discharge said Riddle from liability upon the same, to the amount of the value of such West-Munroe note as the same may be found by the jury.

"The court further instructs the jury that in the absence of all evidence on the subject, the law presumes that the value of the note of James J. West, payable to James E. Munroe, was,

at the time of its conversion, if the jury find from the evidence that it was converted as explained in other instructions of the court, the principal sum thereof and the interest then accrued thereon, and the burden is upon the plaintiff to prove by a preponderance of the evidence that at the time of such conversion, if any is shown by the evidence, the value of said note of said West, payable to said Munroe, was less than face and accrued interest." Even where a note taken in renewal of a former one, extends the time of payment, there is no presumption of law that the second is a satisfaction of the first. Chisholm v. Williams, 128 Ill. 115.

The ground upon which debtors, whether principals or sureties, are discharged by the dealing of the creditor with collaterals, is prejudice to them in consequence of such dealing. 2 Am. L. C. 404; Rogers v. School Tr., 46 Ill. 428. Human ingenuity can not explain how any injury could have resulted to anybody by the exchanges between Odell and West.

The motion made by the appellees to strike out the bill of exceptions is denied. The circumstances in this case are so like those in Hawes v. People, 129 Ill. 123, that the result should be the same. For the error stated, and with no intimation upon any other point, the judgment is reversed and the cause remanded.

*Reversed and remanded.*